UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DWAYNE BINYARD,

        Petitioner,

v.                              CASE NO. 12-10458
                                   HONORABLE DENISE PAGE HOOD

KENNETH ROMANOWSKI,

        Respondent.

_____/

## OPINION AND ORDER DENYING PETITIONER'S MOTION FOR A STAY
## (Dkt. #23) AND HIS PETITION FOR WRIT OF HABEAS CORPUS (Dkt. #1)

Petitioner Dwayne Binyard has filed a *pro se* habeas corpus petition under 28 U.S.C. § 2254 and a motion to stay these proceedings. The habeas petition challenges Petitioner's state convictions for first-degree (pre-meditated) murder, Mich. Comp. Laws § 750.316(1)(a), assault with intent to commit murder, Mich. Comp. Laws § 750.83, felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and possession of a firearm during the commission, or attempt to commit, a felony (felony firearm), Mich. Comp. Laws § 750.227b. Petitioner alleges in his habeas petition that his trial attorney was ineffective for failing to present an alibi defense and that the evidence adduced at trial did not support the jury's verdict. In his pending motion for a stay, Plaintiff asks the Court to hold his habeas petition in abeyance while he exhausts state remedies. Respondent Kenneth Romanowski argues in an amended answer to the habeas petition that Petitioner's claims lack merit. The Court agrees that Petitioner's claims do not warrant habeas relief, and because it is not an abuse of discretion to deny a stay, the Court will deny the motion for a stay and the habeas corpus petition.

## I. Background

The charges against Petitioner arose from an argument and shooting at a Coney Island restaurant on West McNichols Street in Detroit, Michigan on March 2, 2008. David Bradley, Jr., and DeShawn Bell were shot during the incident. Mr. Bell survived the shooting, but Mr. Bradley died from his gunshot wounds. Neither victim was armed during the incident.

Petitioner was tried in Wayne County Circuit Court where the evidence established that, during the early morning hours of March 2, 2008, he asked his girlfriend, Beverly Lane, to fix him something to eat. Because Ms. Lane did not feel like cooking, she suggested that Petitioner go to the nearby Coney Island and get some food. Petitioner left the house after Ms. Lane gave him permission to use her red car. Petitioner came back to the house and said that he had gotten into an argument with some men at the Coney Island. He asked Lawrence Works, who lived in the Lane family's basement, for a gun. Petitioner left the house with a gun, but returned to the house a second time and asked Ms. Lane to inform the police that her car had been stolen. He informed her mother (also named Beverly Lane) that he "got into it" with a guy and that he shot the guy. He then called someone for a ride and left the house.

Norris Elkins testified that he was sitting in his vehicle outside the Coney Island when the shooting occurred. He looked through the glass windows of the restaurant and saw a man shoot someone inside the restaurant. The lighting was good, and he was only about ten feet away from the shooter. He identified Petitioner at trial as the shooter.

Continuing, Mr. Elkins testified that, after Petitioner exited the restaurant and entered a red car, he (Elkins) tried to stop Petitioner by ramming his vehicle into the driver's door

2

of the red car.  Petitioner exited the passenger side of the car and ran away.

The gun which fired the bullets that were removed from the two victims was found in the red car that Petitioner entered and exited after the shooting.  There were no useable fingerprints on it, but his fingerprint was found on the driver's side of the car.  He was arrested a few weeks after the shooting.

During the intervening investigation, the police showed a photo array containing Petitioner's photograph to Norris Elkins, a second eyewitness named Myron Logan, and the surviving victim, DeShawn Bell.  Although Norris Elkins did not identify Petitioner in the photo array, he testified at trial that he left a telephone message for the police after he viewed the array, stating that Petitioner was number one in the array.  Detective Donald Olsen confirmed at trial that Petitioner's photo was number one in the photo array.

Eyewitness Myron Logan was unable to identify Petitioner at trial, but he did identify Petitioner in the photo array.  He claimed at trial that he was not sure who the shooter was. Detective Olsen, however, testified that Mr. Logan immediately picked Petitioner out of the photo array and identified him as "the guy that did the shooting."   And, according to Detective Olsen, Mr. Logan did not appear to be suffering from any psychological issues or medication.

The surviving victim, DeShawn Bell, was unable to make an identification when the police showed him the photo array, and he did not testify at trial.  Petitioner also did not testify or present any witnesses, and on October 9, 2008, the jury found him guilty, as charged, of first-degree (premeditated) murder, assault with intent to commit murder, felon in possession in possession of a firearm, and felony firearm.  The trial court sentenced Petitioner to life imprisonment for the murder conviction and to concurrent terms of fourteen

3

to fifty years in prison for the assault conviction and nine months to five years in prison for the felon-in-possession conviction.  Petitioner received a consecutive sentence of two years in prison for the felony firearm conviction.

Petitioner appealed his convictions on grounds that he was denied effective assistance of trial counsel and that the jury's verdict was based on insufficient evidence. He moved to remand his case to the trial court so that he could file a motion for new trial and seek an evidentiary hearing on his ineffective-assistance-of-counsel claim.  The Michigan Court of Appeals granted Petitioner's motion, and, on remand, the trial court held an evidentiary hearing, known as a *Ginther* hearing.[1]  At the conclusion of the hearing, the trial court denied Petitioner's motion for new trial and concluded that Petitioner was not deprived of effective assistance of counsel.  The Michigan Court of Appeals subsequently affirmed Petitioner's convictions in an unpublished, *per curiam* opinion.  *See People v. Binyard*, No. 290259, 2010 WL 3184493 (Mich. Ct. App. Aug. 12, 2010).  Petitioner raised the same issues in the Michigan Supreme Court, which denied leave to appeal on February 7, 2011, because it was not persuaded to review the issues.  *See People v. Binyard*, 488

---

[1]  *See People v. Ginther*, 390 Mich. 436; 212 N.W.2d 922 (1973), stating that,

> [a] defendant who wishes to advance claims that depend on matters not of record can properly be required to seek at the trial court level an evidentiary hearing for the purpose of establishing his claims with evidence as a precondition to invoking the processes of the appellate courts except in the rare case where the record manifestly shows that the judge would refuse a hearing; in such a case the defendant should seek on appeal, not a reversal of his conviction, but an order directing the trial court to conduct the needed hearing.

*People v. Ginther*, 390 Mich. 436, 443-444; 212 N.W.2d 922, 925 (1973).
.

4

Mich. 1040; 794 N.W.2d 325 (2011).

On October 12, 2011, Petitioner signed and dated his habeas corpus petition.[2]  He raises the same two issues that he presented to the state courts.  On July 19, 2012, Respondent filed a second amended answer to the petition through counsel.  Petitioner filed a reply to the answer, and on July 21, 2014, he filed the pending motion for a stay.

## II.  The Motion for a Stay

In his motion for a stay, Petitioner asks the Court to hold his habeas case in abeyance while he "fully and properly exhausts" state remedies.  The Court has authority to issue stays, but a stay is warranted only in "limited circumstances," such as when "there was good cause for the petitioner's failure to exhaust his claims first in state court," the unexhausted claims are not "plainly meritless," and the petitioner is not "engage[d] in abusive litigation tactics or intentional delay."  *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005).

Petitioner does not appear to be engaged in abusive litigation tactics, but he has not identified the issues that he wants to raise in state court, nor alleged why he did not pursue state remedies for any unexhausted issues before he filed his habeas corpus petition. Consequently, the motion for a stay (Dkt. #23) is denied.  The Court will proceed to address Petitioner's current claims, using the following standard of review.

## III.  Standard of Review

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and

---

[2] For some unknown reason, the petition was not filed with the Clerk of the Court until February 2, 2012.

Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, ___, 131 S. Ct. 770, 783 (2011).  Pursuant to § 2254, the Court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for Part II).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id.* at 411.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)."  *Renico v. Lett*, 559 U.S. 766, 773 (2010).  "A state court's determination that

6

a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

## IV. Analysis

### A. Trial Counsel

Petitioner alleges that his trial attorney was ineffective for failing to present an alibi defense.  Petitioner states that he informed his attorney that he was not present at the crime scene when the shooting occurred and that he had three witnesses who could testify to that fact.  According to Petitioner, each time he raised the issue, his attorney told him that an alibi defense was unnecessary because the prosecution had little evidence and none of the prosecution's witnesses could place him at the crime scene.  Petitioner claims that, if defense counsel had filed a proper notice of alibi and presented his witnesses, the witnesses would have contradicted Norris Elkins' and Myron Logan's identification of him. Petitioner also claims that his alibi witnesses would have supported his girlfriend's testimony that her statement to the police and her testimony at the investigative subpoena were coerced.  Petitioner contends that there was no excuse for counsel's failure to consult with his alibi witnesses and that defense counsel's refusal to present an alibi defense deprived him of a substantial defense.

7

### 1. Clearly Established Federal Law

Defense attorneys have a duty "to investigate all witnesses who may have information concerning his or her client's guilt or innocence," *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005), and "the failure to call a known alibi witness generally would constitute ineffective assistance of counsel." *Bigelow v. Williams*, 367 F.3d 562, 570 (6th Cir. 2004). But, to prevail on his claim, Petitioner must show that his "counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

The "deficient performance" prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* "Judicial scrutiny of counsel's performance must be highly deferential," and "[b]ecause of the difficulties inherent in making the evaluation [of attorney performance], a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Id.* at 689.

The "prejudice" prong of the *Strickland* test "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. Petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,'" but "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 131 S. Ct. at 792 (quoting *Strickland*, 466 U.S. at 693).

8

"The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  *Id.* at 788 (internal and end citations omitted).  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."  *Id.*

### 2. Application

The Michigan Court of Appeals explained the facts underlying Petitioner's claim as follows:

> On the third day of trial, defense counsel stated on the record that defendant told him that he wished to present three witnesses who would testify that defendant was not at the scene of the crime.  Defense counsel informed the court that this was the first time defendant told him about the existence of the witnesses.  Because the defense was required to give notice of an alibi defense in advance of trial, MCL 768.20(1), the trial court did not grant defense counsel additional time to pursue the matter.  At the [post-conviction evidentiary] hearing, defense counsel reiterated that, until the third day of trial, defendant failed to inform him that he knew of three witnesses who could testify that he was elsewhere at the time of the shooting.  Defendant testified to the contrary and maintained that he repeatedly told defense counsel about the three alibi witnesses.

*Binyard*, 2010 WL 3184493, at *1; *see also* Trial Tr. Vol. III, 205-06, Oct. 8, 2008; Mot. Hr'g at 10-15, 18-21, Nov. 20, 2009.

The trial court chose to believe defense counsel's version of the facts at the evidentiary hearing and then concluded that "counsel was very effective."  (Mot. Hr'g at 34, Nov. 20, 2009.)  The Michigan Court of Appeals deferred to the trial court's credibility determination.

This Court also must defer to the state trial court's factual finding on the question of credibility.  *Patton v. Yount*, 467 U.S. 1025, 1038 (1984).  Deference to the trial court's

9

finding is particularly warranted here because, as the Michigan Court of Appeals recognized,

> at the *Ginther* hearing, defendant failed to present the testimony of the alleged alibi witnesses. Defendant attached to his brief on appeal affidavits of two witnesses, both of whom asserted that defendant was at an address on Fairfield when the shootings occurred at Six Mile and Wyoming. Those affidavits were signed on April 24, 2009. However, at the *Ginther* hearing on November 20, 2009, defendant presented no evidence that the witnesses would support his alibi defense and, indeed, defendant's appellate attorney stated on the record that he spoke to two of the witnesses and he did not "believe that they would support the motion that is before the Court." In other words, when asked by counsel, two of the witnesses could not or would not provide testimony to support defendant's alibi. Defendant's appellate counsel further stated that, after many efforts, he was unable to contact the third witness to present any evidence to the trial court.

*Binyard*, 2010 WL 3184493, at *2; *see also* Mot. Hr'g at 26-27, Nov. 20, 2009.

The Michigan Court of Appeals concluded that "the trial court did not err when it concluded that defendant made no effort to bring the witnesses to defense counsel's attention until trial was well under way." *Binyard*, 2010 WL 3184493, at *2. The Court of Appeals further concluded that "the trial court correctly ruled that defense counsel did not provide ineffective assistance to defendant at trial." *Id.*

These conclusions are objectively reasonable. Petitioner had a duty during the discovery phase "to be candid and forthcoming with [his] lawyer." *Taylor v. Illinois*, 484 U.S. 400, 418 (1988). And because the record before the Court indicates that he failed to provide his attorney with timely information about his alibi witnesses, he is not entitled to relief on the basis of his first claim.

## B. Sufficiency of the Evidence

The second and final habeas claim alleges that the evidence adduced at trial was insufficient to support the jury's verdict. Petitioner does not allege that the prosecution

10

failed to prove every element of the charged crimes.  Instead, he alleges that there was insufficient evidence on the issue of identity. The Michigan Court of Appeals disagreed and concluded that "ample evidence supported the jury's verdict."  *Binyard*, 2010 WL 3184493, at *2.

### 1.  Legal Standard

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  After *Winship*, the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.  But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979) (internal citation and footnote omitted) (emphases in original).

A "defendant's identity is nothing more or less than an element that must be established beyond a reasonable doubt in order to demonstrate guilt."  *United States v. Thomas*, 763 F.3d 689, 694 (7th Cir. 2014).  But "[i]dentity . . . is not a unique issue that can be proved only by someone pointing a finger at the defendant in the courtroom."  *Id.* And, "[i]f the evidence at trial was sufficient to permit jurors to find beyond a reasonable doubt that the man seated at the defense table was the same person referred to in the account of the offense, then there is no reason to overturn the jury's conviction based on the government's alleged failure to prove identity."  *Id.*

11

### 2.  Application

Petitioner claims that the two eyewitnesses who placed him at the crime scene were unreliable witnesses.

### a.  Norris Elkins

Petitioner points out that Norris Elkins initially could not identify him in the photo array.  (Trial Tr. Vol. I, 195-96, Oct. 6, 2008).  A witness's failure to identify a defendant before trial goes only to the weight to be accorded testimony.  *United States v. Causey*, 834 F.2d 1277, 1286 (6th Cir. 1987).   Furthermore, as the Michigan Court of Appeals recognized,

> Norris Elkins witnessed the shooting and testified at trial that he had "[n]o doubt" that defendant was the shooter.  He further testified that, though he failed to initially identify defendant from a photographic array, he called the police department later the same day and stated that he believed the perpetrator was pictured in the first numbered photo, which was a photo of defendant.   Again, however, Mr. Elkins made a positive, unequivocal identification of defendant in the trial court.

*Binyard*, 2010 WL 3184493, at *2.

Petitioner points out that Mr. Elkins' testimony was contradicted in part by two of the police officers involved in the case.  For example, Mr. Elkins testified that, after the shooting, he ran to the gas station across the street and notified Officers Damon Dennard and Tommy Jackson about the shooting.  (Trial Tr. Vol. I, 185, 225-26, Oct. 6, 2008.) Officer Dennard, on the other hand, testified that he did not know Mr. Elkins or talk to him and that someone named DeWayne Copening flagged him down and told him about the shooting.  (Trial Tr. Vol. II, 156-58, Oct. 7, 2008.)

Another discrepancy in the testimony occurred when Mr. Elkins claimed that he left a telephone message for Investigator Love, stating that Petitioner was number one in the

photo array.  (Trial Tr. Vol. I, 254-55, Oct. 6, 2008.)  This testimony was contradicted by Investigator Love, who stated that he heard nothing from Elkins after taking Elkins' statement.  (Trial Tr., Vol. II, 20-21, Oct. 7, 2008.)  But these were minor discrepancies in the testimony, and "attacks on witness credibility are simply challenges to the *quality* of the government's evidence and not to the sufficiency of the evidence."  *United States v. Farley*, 2 F.3d 645, 652 (6th Cir. 1993) (emphasis in original).

> A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court.  *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).  It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony.  *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992).

*Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).

### b.  Myron Logan

Petitioner points out that Mr. Logan did not identify him at trial.  Logan, in fact, testified that he was not sure the person he picked in the photo array was the shooter and that he did not know how the shooter looked because he had never seen the person.  He claimed that he was schizophrenic, bipolar, "kind of slow," sometimes forgetful, and on medication for mental illness.  (Trial Tr. Vol. II, 187, 195-97, Oct. 7, 2008.)  However,

> [a]ccording to homicide investigator Donald Olson, Mr. Logan immediately identified defendant as the shooter when he viewed the photo array.  Mr. Logan acknowledged at trial that he picked defendant out of the photographs and the array shows that he placed his initials on defendant's photo when he made the identification.  Though Mr. Logan testified at trial that he is on medication for a mental illness and has memory problems, Officer Olsen testified that, when Mr. Logan identified defendant on the day of the crime, it did not appear that he was on drugs or had any mental problems.

*Binyard*, 2010 WL 3184493, at *2.

### c.  Circumstantial Evidence

13

Petitioner contends that the other evidence tying him to the shooting was circumstantial.  Nevertheless, "[c]ircumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Barnett*, 398 F.3d 516, 522 (6th Cir. 2005) (quoting *United States v. Spearman*, 186 F.3d 743, 745 (6th Cir. 1999)).  In this case, moreover, the circumstantial evidence linking Petitioner to the crime was particularly strong.  As pointed out by the Michigan Court of Appeals,

> Mr. Elkins testified that, after the shooting, defendant walked out of the Coney Island and got into a red Mercury Sable.  In an attempt to stop defendant, Mr. Elkins rammed the Sable with his own vehicle.  Defendant fled on foot, leaving behind the .44 Magnum revolver that ballistics tests confirmed was used in the shooting.  It is undisputed that defendant's girlfriend was the owner of the red Mercury Sable found at the scene of the shooting and photographs show the body damage caused by Mr. Elkins's attempts to stop defendant from fleeing the scene.

> Beverly Lane, the mother of defendant's girlfriend, testified that, shortly after the shooting, defendant woke her up and asked to use her car.  Ms. Lane assumed defendant had damaged her daughter's car and she overheard defendant say that he had an altercation with some men at the Coney Island.  Lawrence Works lived in the same house with Ms. Lane and defendant's girlfriend.  He testified that, on the morning of the incident, defendant told him he had a confrontation with some men and he asked for a gun.  Mr. Works testified that he gave defendant a .44 Magnum revolver and defendant left with it.  Defendant returned a half hour to an hour later and used Mr. Works's cellular phone to ask someone to pick him up.  Mr. Works further acknowledged that he heard defendant tell his girlfriend that she should report that her car was stolen.  Defendant's girlfriend testified at trial that defendant went to the Coney Island around the time of the shooting and that he drove her red Sable.  Though she denied it at trial, defendant's girlfriend testified under an investigative subpoena that she heard defendant say that he shot some men and that defendant asked her to report her car stolen.

*Binyard,* 2010 WL 3184493, at *3.

The younger Beverly Lane, her mother, and Lawrence Work have executed

14

affidavits stating that their testimony and prior statements were false and coerced. *See* Pet'r Reply Brief, Affidavits of Lawrence Milton Works, Beverly J. Lane (the daughter), and Beverly J. Lane (the mother).[3]  The Michigan Court of Appeals, however, correctly pointed out that, even if one excluded the testimony of those three witnesses, there was sufficient evidence to support the jury's verdict because Petitioner "was positively identified as the shooter and other circumstantial evidence linked him to the crime." *Binyard*, 2010 WL 3184493, at *3.

A rational juror could have concluded from the evidence taken in the light most favorable to the prosecution that Petitioner shot David Bradley, Jr., and DeShawn Bell at the Coney Island restaurant on March 2, 2008.  Further, the decision of the Michigan Court of Appeals – that the evidence was "clearly sufficient to support the jury's verdict" – was objectively reasonable.  Petitioner therefore has no right to relief on the basis of his challenge to the sufficiency of the evidence.

## V. Conclusion

The state appellate court's adjudication of Petitioner's claims on the merits was not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable application of the facts.  It certainly was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87. Accordingly, the petition for writ of habeas corpus is **DENIED**.

---

[3]  The younger Beverly Lane also testified at trial that her statement to the police was coerced.  She claimed that the police handcuffed her, tried to make her admit that she heard something about the shooting, and threatened to take her child from her. (Trial Tr. Vol. IV,  39-40, Oct. 9, 2008.)

15

## VI.  Regarding a Certificate of Appealability and *In Forma Pauperis* Status on Appeal

Before Petitioner may appeal this Court's decision, a certificate of appealability must issue.  28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Reasonable jurists would not find the Court's assessment of Petitioner's claims debatable or wrong, nor conclude that the issues deserve encouragement to proceed further.  The Court therefore declines to grant a certificate of appealability.  Petitioner nevertheless may proceed *in forma pauperis* on appeal without further authorization if he appeals this decision, because he was granted leave to proceed *in forma pauperis* in this

Court, and an appeal could be taken in good faith.  Fed. R. App. P. 24(a)(3)(A).

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  January 20, 2015

16

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 20, 2015, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager